```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA
_____
                              )
DISTRICT OF COLUMBIA,         )
                              )
     Plaintiff,               )
                              )
          v.                  )    Civ. Action No. 10-456 (EGS)
                              )
DIANNE NELSON,                )
Guardian and next             )
friend of C.P., a minor,      )
                              )
     Defendant.               )
_____)
```

**MEMORANDUM OPINION**

Plaintiff District of Columbia brings this action under the Individuals with Disabilities Education Act ("IDEA") against Dianne Nelson, the guardian and next friend of C.P., a minor, challenging certain portions of an administrative decision concerning the education of C.P. Pending before the Court are the parties' cross-motions for summary judgment. Upon consideration of the motions, the responses and replies thereto, the applicable law, the entire record, and for the reasons set forth below, plaintiff's motion for summary judgment is hereby **GRANTED**, and defendant's cross-motion for summary judgment is hereby **DENIED**. The Court concludes that the hearing officer's decision is contrary to the IDEA and, accordingly, the Court hereby **REMANDS** this matter to the administrative hearing officer for further proceedings consistent with this opinion.

## I. FACTUAL BACKGROUND

Defendant C.P. is a high school student who lives in the District of Columbia with her mother, defendant Dianne Nelson. Administrative Record ("AR") at 44. C.P. suffers from Attention Deficit Hyperactivity Disorder and has borderline cognitive skills. AR at 7. During the 2008-2009 school year, C.P. attended ninth grade at and received special education services from Cesar Chavez Public Charter School. District of Columbia Public Schools ("DCPS") was the relevant Local Education Agency for the Charter School and supervised C.P.'s special education services.

At issue in the instant case is the December 21, 2009 determination issued by an independent hearing officer in response to a complaint filed by Nelson regarding C.P.'s individual education plan ("IEP"). In her complaint before the hearing officer, Nelson proposed a full-time special education placement for C.P. at Accotink Academy, a private institution in Springfield, VA that provides full-time special education services to District of Columbia students. AR at 15. After an evidentiary hearing was held, the hearing officer determined that C.P. was "entitled to a full-time special education day school in order to progress toward a duly awarded diploma" and ordered DCPS to place C.P. at Accotink Academy at public expense for the 2009-2010 school year. AR at 20.

Plaintiff challenges the hearing officer's determination ("HOD"), specifically Paragraph Two of the order. Paragraph Two states:

> The Accotink Academy staff, with the Petitioner, shall be responsible for the revision and implementation of the Student's IEP. The Respondent [DCPS] shall remain responsible for the supervision and cost of the special education and related services provided to the Student, ensuring that sufficient education and supports are provided for the Student to permit her to graduate with a diploma no later than the semester ending following her 21st birthday. Respondent staff shall have no authority to object to the special education and related services provided unless there is clear data indicating the Student is not making sufficient progress and Accotink Academy is unwilling or unable to alter the program to effectively address any lack of expected progress. Thus, if the Student is not making sufficient progress toward a diploma, the Respondent may make a change in location to a comparable full-time special education day school, with two weeks['] notice to the Petitioner and Accotink Academy, pursuant to 34 C.F.R. § 300.503. If Accotink Academy fails to adhere to due process requirements as directed by this order or the Respondent, the Respondent may make a change in location following the due process requirements just described.

AR at 20-21. Plaintiff asserts that this paragraph "contains language that is erroneous as a matter of law that must be stricken to permit full compliance with the [IDEA]." Pl.'s Mot. 1.

## II. STATUTORY FRAMEWORK

The purpose of the IDEA is "to ensure that all children with disabilities have available to them a free appropriate public education ["FAPE"] that emphasizes special education and

3

related services designed to meet their unique needs and prepare them for further education, employment, and independent living . . . ." 20 U.S.C. § 1400(d)(1)(A). A "free appropriate public education" must be "sufficient to confer some educational benefit." *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 200 (1982). Parents or guardians may "present a complaint with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(6)(A). Following a parent's due process complaint, an independent hearing officer determines whether the student received a free appropriate public education. *See id.* § 1415(f)(3)(E)(i). After the hearing, "[a]ny party aggrieved by the findings and decision . . . shall have the right to bring a civil action with respect to the complaint presented . . . ." *Id.* § 1415(i)(2)(A).

Under the IDEA, the hearing officer's decision is afforded "less deference than is conventional in administrative proceedings." *Reid v. Dist. of Columbia*, 401 F.3d 516, 521 (D.C. Cir. 2005). However, while a court must "engage in a more rigorous review of the decision below than is typical in administrative cases," a court should "nevertheless accord the Hearing Officer's decision due weight." *Wilson v. Dist. of*

4

*Columbia*, 770 F. Supp. 2d 270, 274 (D.D.C. 2011) (internal citations omitted). As this Circuit has explained:

> Deference to the hearing officer makes sense in a proceeding under the Act for the same reasons that it makes sense in the review of any other agency action -- agency expertise, the decision of the political branches (here state and federal) to vest the decision initially in the agency, and the costs imposed on all parties of having still another person redecide the matter from scratch. But the district court's authority under § 1415(e) to supplement the record below with new evidence, as well as Congress's call for a decision based on the 'preponderance of the evidence,' plainly suggest less deference than is conventional.

*Kerkam v. McKenzie*, 862 F.2d 884, 887 (D.C. Cir. 1988).

## III. ANALYSIS

DCPS asserts that it is entitled to summary judgment because Paragraph Two conflicts with the IDEA in a number of respects. Defendant, in its cross-motion for summary judgment, argues that DCPS is not an "aggrieved party" under the IDEA, and that the HOD - when read in its entirety – does not violate the IDEA. Having carefully reviewed the HOD's order, the parties' arguments, and the applicable law, the Court concludes that the HOD's order is contrary to the IDEA. However, particularly because the relief plaintiff has requested is the deletion of a significant portion of the hearing officer's order, and recognizing that the hearing officer is better equipped to issue a revised order in compliance with the IDEA that will ensure that C.P. has a free appropriate public education designed to

5

meet her unique needs, the Court will **REMAND** the matter to the hearing officer rather than substitute its own judgment for that of the hearing officer.

Each of the challenges raised by plaintiff to the existing HOD are now addressed in turn.[1]

**A.   The IEP Team**

First, DCPS objects to the language in the HOD stating that the "Accotink Academy staff, with the Petitioner, shall be responsible for the revision and implementation of the Student's IEP." AR at 20. Plaintiff asserts that this provision is "100% contrary to IDEA and must be reversed because DCPS, as the [Local Education Agency], is required to be a member of this student's IEP team." Pl.'s Mem. 9-10. Plaintiff argues that the HOD's order "not only improperly delegates full authority over C.P.'s IEP to Accotink and C.P.'s mother, by implication, it also improperly enjoins DCPS from exercising its rights and

---

[1]   As a threshold issue, defendant claims that DCPS is not an "aggrieved party" within the meaning of § 1415(i)(2)(A) and therefore may not bring a civil action. In particular, defendant asserts that DCPS is not an aggrieved party because DCPS is not restricted or prevented from carrying out its obligations under the IDEA if the HOD is read in its entirety. The Court finds this argument wholly unpersuasive. DCPS asserts, and the Court agrees, that the HOD "imposed specific obligations upon DCPS that are contrary to IDEA and which place DCPS in the untenable position of having to choose between compliance with the law or compliance with the HOD." Pl.'s Opp. 9.

6

responsibilities to this student to participate in all aspects of her IEP." Pl.'s Mem. 10.

In response, defendant argues that the very next sentence of Paragraph Two, providing in part that DCPS "shall remain responsible for the supervision and cost of the special education and related services provided to the Student," provides for a sufficient role for DCPS. In particular, defendant asserts that "the District, the Accotink Academy staff, the parent and the student are certainly members of the IEP as the District remains financially responsible for C.P.'s access to FAPE up and until the time her needs change, or the parent and the District agree its participation is not necessary, its attendance and participation at future meetings is not prohibited, in fact it is mandated." Def.'s Mem. 11.

The Court agrees with plaintiff. Section 1414(d)(1)(B)(iv) of the IDEA requires that a representative of the local educational agency be a member of the IEP Team, and Section 1414(d)(4)(A)(ii) states that "[t]he local educational agency shall ensure that . . . the IEP Team . . . *revises* the IEP as appropriate[.]" *Id.* (emphasis added). The HOD here is therefore inconsistent with the IDEA when it states that only the private school and the parent "shall be responsible for the revision and implementation of the Student's IEP." AR at 20. The next sentence, which does assign DCPS the responsibility of the

7

"supervision and cost of the special education and related services provided to the Student," still fails to provide DCPS with any role specifically as it relates to the IEP and the IEP Team. Contrary to Nelson's assertion, the language of the HOD even read in its entirety does not afford DCPS the ability to fully comply with its responsibilities under the IDEA.

   B.   **C.P.'s Graduation**

Second, DCPS objects to the HOD language stating that the "Respondent [DCPS] shall . . . ensur[e] that sufficient education and supports are provided for the Student to permit her to graduate with a diploma no later than the semester ending following her 21st birthday." A.R. 20. DCPS argues the "free appropriate public education" standard set forth in IDEA does not guarantee any substantive outcome. Rather, DCPS is only required to provide a "basic floor of opportunity." Pl.'s Opp. 11, citing *Rowley*, 458 U.S. at 201. Nor, according to plaintiff, does mere advancement from grade to grade mean that a FAPE has necessarily been provided to C.P. Pl.'s Mem. 11. In response to plaintiff's objection, defendant asserts that plaintiff has misinterpreted *Rowley* and that "the fact that C.P. seeks to obtain a high school diploma furthers the purposes and intent of the entire IDEA Act." Def.'s Mem. 11-12.

Again, the Court agrees with DCPS. The hearing officer erred by requiring that DCPS provide sufficient services to

8

ensure C.P. graduates by the semester after her twenty-first birthday. The District of Columbia is eligible for federal funding under the IDEA if it "has in effect policies and procedures to ensure. . . . free appropriate public education is available to all children with disabilities residing in the State between the ages of 3 and 21[.]" 20 U.S.C. § 1412(a). The "standard of free appropriate education," however, "does not require an educational program to maximize the potential of handicapped children, but mandates, more modestly, one sufficient to confer some educational benefit." *Leonard v. McKenzie*, 869 F.2d 1558, 1561 (D.C. Cir. 1989) (internal quotations and citations omitted). As the Supreme Court explained in *Rowley*,

> In passing [the IDEA], Congress sought primarily to make public education available to handicapped children. But in seeking to provide such access to public education, Congress did not impose upon the States any greater substantive educational standard than would be necessary to make such access meaningful. Indeed, Congress expressly '[recognized] that in many instances the process of providing special education and related services to handicapped children is not guaranteed to produce any particular outcome.' Thus, the intent of the Act was more to open the door of public education to handicapped children on appropriate terms than to guarantee any particular level of education once inside.

*Rowley*, 458 U.S. at 198 (quoting S. Rep. No. 94-168, at 11 (1975)). In the instant case, the hearing officer's order that DCPS "ensur[e] that sufficient education and supports are

9

provided for the Student to permit her to graduate with a diploma no later than the semester ending following her 21st birthday" is therefore inconsistent with the IDEA because it requires DCPS to ensure a particular outcome.

### C.  Conditions Placed on DCPS's Objections

Next, plaintiff challenges the language in the HOD stating that DCPS "shall have no authority to object to the special education and related services provided *unless there is clear data indicating the Student is not making sufficient progress and Accotink Academy is unwilling or unable to alter the program to effectively address any lack of expected progress*." AR at 20 (emphasis added).  Plaintiff objects to this language, arguing that it "improperly limits DCPS' ability to participate in the development of an IEP and placement of the student by subordinating the authority of the DCPS IEP team to that of Accotink, a private school."  Pl.'s Mem. 12.

Defendant responds by asserting that the language is consistent with the IDEA because "if progress is not being met as it relates to specialized instruction, such a lack of progress must be addressed by the IEP team. In addressing the lack of progress, data must be collected and reviewed to ascertain the causes on no progress."  Def.'s Mem. 12. According to the defendant, the HOD's order "does not prohibit or deny the District from assuming the role that IDEA has

mandated for it as the local educational agency." Def.'s Mem. 13.

Again, the Court finds that the language of the HOD, which prohibits DCPS from objecting to the special education and related services provided to C.P. unless there is "clear data indicating the Student is not making sufficient progress and Accotink Academy is unwilling or unable to alter the program to effectively address any lack of expected progress," restricts the actions of DCPS in a manner that is inconsistent with the IDEA. As noted by the plaintiff, not only is the requirement of "clear data" not present in the IDEA, but the HOD would require DCPS to wait until a private school refuses to act before DCPS would be permitted to carry out its duties under the IDEA. This is patently inconsistent with the IDEA. In particular, Section 1414(d)(4)(A) states that:

> The local educational agency "shall ensure that . . . the IEP Team (i) reviews the child's IEP periodically, but not less frequently than annually, to determine whether the annual goals for the child are being achieved; and (ii) revises the IEP as appropriate to address—
>
> > (I) any lack of expected progress toward the annual goals and in the general education curriculum, where appropriate;
> >
> > (II) the results of any reevaluation conducted under this section;
> >
> > (III) information about the child provided to, or by, the parents, as described in subsection (c)(1)(B);

11

>      (IV) the child's anticipated needs; or
>
>      (V) other matters.

If, as the HOD states, DCPS is required to wait for inaction by the Accotink Academy before it may object to or revise C.P.'s IEP, it will not be able to comply with the requirements of the IDEA.

### D.   Comparable Full-Time Day School

DCPS also argues that the HOD's requirement that "if the Student is not making sufficient progress toward a diploma [at Accotink Academy], the Respondent may make a change in location to a comparable full-time special education day school," is contrary to the IDEA. DCPS asserts that since the IDEA requires that the IEP team place C.P. in the "least restrictive environment," the HOD is inconsistent with the IDEA because it requires the IEP team to place C.P. in a *full-time* special education school and does not allow the IEP Team to consider whether a regular educational environment, or part-time placement in a special education school, would suffice.

The IDEA requires that children with disabilities be placed in the "least restrictive environment," *i.e.* that, "to the maximum extent appropriate, children with disabilities, including children in public or private institutions or other care facilities, are educated with children who are not

12

disabled, *and special classes, separate schooling, or other removal of children with disabilities from the regular educational environment occurs only when the nature or severity of the disability of a child is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily.*" 20 U.S.C. § 1412(a)(5)(emphasis added).

Defendant argues that, despite the language in Paragraph Two, DCPS retains the authority to move C.P. to a less restrictive environment. In support of this, the defendant points to language contained in Paragraph 6 of the HOD's order which states that:

> Nothing in this order is intended to restrict the IEP team from making other changes appropriate and necessary for the Student to be provided a free and appropriate public education, except that the student will remain in a full time special education day school until she graduates with a diploma, ages out, or the Student or the Petitioner (whom ever has decision making authority for the Student) and the Respondent agree to a new placement (more or less restrictive setting).

AR at 22.

Upon consideration of the relevant provisions in the HOD, the Court concludes that the language of the HOD here is again inconsistent with the IDEA. In particular, even taking Paragraph 6 into account, which appears to allow DCPS to provide C.P. with part-time placement in a special education school

13

instead of full-time placement *only if* the student and/or parent agrees, the Court concludes that the HOD prevents DCPS from complying with the IDEA requirement of a "least restrictive environment."

**E.  Notice Requirement**

Finally, plaintiff argues that the HOD cannot require DCPS to give two weeks' notice to C.P.'s parent and the school, Accotink, before making changes to C.P.'s placement.  With respect to notification to the private school, DCPS argues that nothing in the IDEA requires any prior written notice to a private school at all before a proposed change in placement is initiated by the local educational agency.  With respect to notification to the parent, DCPS argues that although the IDEA requires that notice be provided to a parent within "a reasonable time before" the agency proposes to "initiate or change" a student's IEP, nothing in the IDEA or the accompanying regulations require a minimum or maximum amount of time for DCPS to give notice to a parent.

Defendant, in response, concedes that the IDEA does not require schools to be notified, but argues that "[n]onetheless there is no violation that could be levied against the District for failing to provide prior written notice to Accotink Academy."  Def.'s Mem. at 13.  Defendant further argues that DCPS is not harmed by a requirement that it give two weeks'

14

notice to C.P.'s parent and private school and that two weeks' notice is not unreasonable. Def.'s Mem. 13.

Regarding the notification to the parent, the Court will defer to the hearing officer. The IDEA requires that a local educational agency must give written notice to a student's parent or guardian before changing a student's educational placement. 20 U.S.C. § 1415(b)(3). This notice must be given within a "reasonable time" before the agency acts. 34 C.F.R. § 300.503(a). The Court concludes that the hearing officer's determination – that a requirement of two weeks' notice to the parent was "reasonable" within the meaning of 34 C.F.R. § 300.503(a) – is not contrary to the IDEA, and it was within the discretion of the hearing officer to make such a determination.

However, HOD's requirement that DCPS give notice to the private school is contrary to the IDEA. The IDEA and the relevant regulations, although they detail the circumstances under which a parent must be given notice, do not include any requirement that a private school be notified. Accordingly, the Court concludes that Congress did not intend for such a requirement to be imposed, and the HOD erred by mandating it.

## IV. CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment is hereby **GRANTED**, and defendant's cross-motion for

15

summary judgment is **DENIED**.  This matter is **REMANDED** to the administrative hearing officer for further proceedings consistent with the Court's ruling.  An appropriate Order accompanies this Memorandum Opinion.

**SIGNED**:	**Emmet G. Sullivan**
	**United States District Court Judge**
	**September 21, 2011**